```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DANNY VARGAS and                       :
GLADYS LATORRE,                        :     CIVIL ACTION
                                       :     NO. 16-1386
         Plaintiffs,                   :
                                       :
     v.                                :
                                       :
LYNCH, et al.,                         :
                                       :
         Defendants.                   :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                October 12, 2016

      Plaintiffs Danny Vargas ("Danny"), a United States citizen, and his mother, Gladys LaTorre ("Gladys"), a native and citizen of Peru, together petition the Court to review immigration agency actions that could result in Gladys's forcible removal to Peru after having lived in the United States for the past 22 years. Defendants Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), and various individuals working in their official capacities for those agencies (collectively with the agencies, "Defendants") have moved to dismiss Plaintiffs' complaint on the basis that this Court lacks subject matter jurisdiction or, alternatively, that Plaintiffs have failed to state a claim.

For the reasons that follow, the Court will grant Defendants' motion to dismiss on the basis that the Court lacks subject matter jurisdiction.

## I. FACTUAL BACKGROUND

On April 3, 1993, at age 34, Gladys LaTorre (née Vargas) entered the United States without inspection from her native Peru. Compl. ¶ 8, ECF No. 1. Three years later, on February 16, 1996, she married United States citizen Semaya LaTorre ("Sammy") in Pennsylvania, and the couple obtained a residence at 614 Carpenter Street, Philadelphia, PA 19147. Id. at ¶ 9.

On March 14, 1997, just over a year after they were married, Sammy filed an I-130 Immediate Relative Immigrant Petition for Gladys ("Sammy's Petition"). Id. at ¶ 10. In conjunction with this petition, the Immigration and Naturalization Service ("INS") interviewed Sammy and Gladys sometime in July or August 1997.[1] Id. at ¶ 11; Mot. Dismiss ¶ 5, ECF No. 4. During the interview, an immigration officer separated the couple and posed questions to them individually.

---

[1] The Complaint states that the date of the interview was August 27, 1997. Compl. ¶ 11. The Motion to Dismiss states that the date of the interview was July 18, 1997. Mot. Dismiss ¶ 5. Plaintiffs' Exhibit B, a Notice of Intent to Deny ("NOID") issued by the INS, see discussion infra, also states that the interview took place on July 18, 1997. See Pls.' Ex. B, ECF No. 1-4. The exact date of the interview is immaterial to our resolution of this case.

2

Id. at ¶ 12. While separated, Sammy and Gladys provided discrepant answers to like questions, including what they had eaten for breakfast that morning and how they had celebrated their birthdays together. Id.; see also Pls.' Ex. B, ECF No. 1-4. These discrepancies caused their case to be referred to the INS "investigations branch." Id. at ¶ 13.

On February 23, 1999, INS agents visited the couple's address of record, 614 Carpenter Street, and found Gladys but not Sammy there. Id. at ¶ 14. On March 8, 1999, agents visited Sammy's mother at her residence, located at 3747 N. 7th Street, Philadelphia, 19140. Id. at ¶ 15. Though Sammy was not present during this visit, Sammy's stepfather informed the INS agents that Sammy resided at 3747 N. 7th Street. Id.

INS agents visited 3747 N. 7th Street again the next day, and this time, Sammy was present at the residence. Id. at ¶ 16. The INS noted that Sammy's driver's license listed his address as 3747 N. 7th Street, and, according to the INS, Sammy admitted to residing there. Mot. Dismiss ¶ 9. Further, the INS maintains that Sammy's mother, stepfather, and sister all stated during this visit that they did not know the name of Sammy's wife.[2] Id.

---

[2] In responsive affidavits submitted as part of this litigation, Sammy's mother and sister deny that this ever happened. See Pls.' Ex. J, ECF No. 1-5.

On May 13, 1999, Sammy and Gladys appeared for a second interview in connection with Sammy's Petition. Compl. ¶ 17. The couple again provided discrepant answers to like questions, and consequently, the interviewing officer had INS agents accompany the couple to their marital home at 614 Carpenter Street. Id. at ¶¶ 17-18.

On April 27, 2001, Danny, who is Gladys's son and a U.S. citizen, filed his own I-130 Immediate Relative Petition for Gladys ("Danny's First Petition"). Id. at ¶ 20. The INS approved this petition on October 8, 2001. Pls.' Ex. C, ECF No. 1-4.

On February 26, 2003, USCIS[3] issued a Notice of Intent to Deny ("NOID") regarding Sammy's Petition on the basis that Sammy had "failed to demonstrate that [his] marriage was for some purpose other than to confer on [Gladys] an immigration benefit." Pls.' Ex. B, ECF No. 1-4. On March 7, 2003, Sammy and

---

[3] Plaintiffs note that "[a]t the time of the couple's filing and first interview, the agency responsible for such immigration matters was known as the Immigration and Naturalization Service, or 'INS.' The INS, however, was dismantled under the Homeland Security Act of 2002 (Pub. L. No. 107-296, 116 Stat. 2135), with the creation of the Department of Homeland Security and its three branches. The branch known as the U.S. Citizen[ship] and Immigration Services, or USCIS, assumed responsibility for immigrant petitions and other related matters on March 1, 2003." Compl. at 6 n.1.

Gladys amicably divorced, thereby rendering Sammy's Petition automatically revoked by operation of law.[4] Compl. ¶ 23.

On September 4, 2003, Sammy and Gladys responded to the NOID regarding Sammy's Petition by sending USCIS a copy of their divorce decree. Id. at ¶ 24. They also submitted bona fides evidence including bank statements, utility bills, a lease, letters of support, and family photos. Id.

On April 29, 2004, Gladys filed a Form I-485 Application to Adjust Status based on the October 8, 2001, approval of Danny's First Petition. Id. at ¶ 25. Several months later, on November 22, 2004, USCIS officially denied Sammy's Petition based solely on the fact that the couple had divorced. Id. at ¶ 26. USCIS expressly declined to consider the additional bona fides evidence submitted by Sammy and Gladys, stating that "[i]n that the relationship no longer exists, there is no need to address this information." Pls.' Ex. I, ECF No. 1-5.

On March 10, 2006, USCIS issued a Notice of Intent to Revoke ("NOIR") regarding Danny's First Petition. Id. at ¶ 27. The NOIR stated that Danny's First Petition was "approved in error" and "without prior consideration of substantial evidence in the record that would have precluded the approval of [the] petition." Pls.' Ex. E, ECF No. 1-4. The NOIR stated further that USCIS "conducted an independent review of the record and

---

[4] See 8 C.F.R. 205.1(a)(i)(D).

5

found substantial and probative evidence establishing that the beneficiary previously entered into a sham marriage with Semaya LaTorre in an attempt to obtain immigration benefits." Id.

One month later, on April 10, 2006, Danny and Gladys responded to the NOIR by submitting updated bona fides evidence, including joint bank account records (of Sammy and Gladys) and affidavits from, among others, Sammy and his mother and sister. Compl. at ¶ 28. Additionally, Danny requested that USCIS provide him with supporting evidence to substantiate its allegations against his mother.[5] Id.

According to USCIS, an immigration officer spoke with Sammy via telephone on May 4, 2006 regarding the contents of his affidavit. Id. at ¶ 29. Just over one week later, on May 12, 2006, USCIS revoked Danny's First Petition "based on overwhelming evidence contained in the record . . . show[ing] that [Gladys] and [Sammy] entered into a sham marriage in an attempt to obtain immigration benefits." Pls.' Ex. K, ECF No. 1-6.

On May 27, 2006, Danny filed an EOIR-29 Notice of Appeal challenging the revocation ("First Appeal") with the

---

[5] Danny claims to have never received this information, and he complains that this constitutes a due process violation on the grounds that he should have been entitled to "inspect the record of proceedings" pursuant to 8 C.F.R. § 103.2(b)(16). See Compl. ¶ 55; Pls.' Opp. 16–18, ECF No. 5. Because we conclude that we lack jurisdiction over this case, we decline to consider this issue.

Board of Immigration Appeals ("BIA"). Compl. ¶ 31. The BIA apparently never rendered a decision on this appeal. See Mot. Dismiss at 10 n.2 ("[I]t appears that the [BIA] did not issue a decision on the [First Appeal] due in part to [Danny] filing a second I-130 visa petition.").

On August 18, 2007, Sammy died in a motorcycle accident. Compl. ¶ 32. Just under two years later, on August 3, 2009, the Department of Homeland Security ("DHS") placed Gladys into removal proceedings by issuing a Notice to Appear in Philadelphia Immigration Court. Id. at ¶ 33.

To defend against his mother's removal, Danny filed a second I-130 Petition ("Danny's Second Petition") for Gladys on March 2, 2011. Id. at ¶ 34. USCIS approved this petition mere weeks later, on March 16, 2011. Id. at ¶ 35. On February 9, 2012, however, USCIS issued a NOIR regarding Danny's Second Petition, once again indicating that the approval had been made in error and that an independent review of the record showed that approval should have been precluded because Gladys had previously entered into a sham marriage with Sammy. Id. at ¶ 36. Danny filed a response to this NOIR on March 8, 2012, but USCIS nevertheless revoked the Second Petition on March 26, 2012. Id. at ¶¶ 37-38. Danny appealed this revocation to the BIA by filing a second EOIR-29 ("Second Appeal") on April 3, 2012. Id. at ¶ 39.

On July 29, 2014, the BIA denied the Second Appeal for lack of jurisdiction, finding that the record did not clearly indicate that Danny had authorized the appeal. Id. at ¶ 41. Danny filed a Motion to Reconsider on August 25, 2014, arguing that his authorization was evidenced by a signed EOIR-27 that had been filed concurrently with the EOIR-29. Id. at ¶ 42. On April 24, 2015, the BIA reopened the Second Appeal, conducted a de novo review, and dismissed the appeal on the merits. Id. at ¶ 43. The BIA noted that "[t]he record contains substantial and probative evidence that the beneficiary previously sought to obtain an immigration benefit based on a marriage entered into for the purpose of avoiding the immigration laws." Pls.' Ex. W, ECF No. 1-10.

Plaintiffs brought the instant action under the Immigration and Nationality Act of 1952 (the "INA"), 8 U.S.C. §§ 1101–1537, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, against the DHS, USCIS, and several individual Defendants working in their official capacities with those agencies.[6] See Compl. ¶¶ 2-5. Plaintiffs seek declaratory

---

[6] The individual Defendants include the following: (1) Loretta Lynch, in her official capacity as the Attorney General of the United States; (2) Jeh Johnson, in his official capacity as the Secretary of the DHS; (3) Leon Rodriguez, in his official capacity as the Director of USCIS; (4) Edward A. Newman, in his official capacity as the District Director of the USCIS Vermont Service Center; and (5) Michael Borgen, in his official capacity as the Director of USCIS Philadelphia. Plaintiffs note that

and injunctive relief pursuant to the INA, the APA, and the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, 28 U.S.C. §§ 1361-1369. See id. at ¶¶ 1-2. They claim that Gladys's "only mode of relief from being ordered removed from the United States and forcibly returned [to Peru] after 22 years in the United States would be the approval o[f] her son Danny's petition followed by her adjustment of status." Id. at ¶ 47.

## II.  PROCEDURAL HISTORY

Plaintiffs filed their Complaint on March 25, 2016. ECF No. 1. On May 26, 2016, Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. Plaintiffs responded in opposition thereto on June 7, 2016. ECF No. 5. The Court held a hearing on the motion to dismiss on September 15, 2016. ECF Nos. 8, 11. Following the hearing and pursuant to the Court's request, Defendants provided notice of supplemental authority, and Plaintiffs submitted a memorandum in opposition to this notice. ECF Nos. 14, 15.

---

"Defendants DHS and USCIS are made party defendants for purposes of obtaining full relief under the APA." Compl. ¶ 6.

**III. MOTION TO DISMISS**

A party may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Court's method of review is determined by whether the Rule 12(b)(1) motion presents a "facial" or "factual" attack on the claim at issue. Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack "contests the sufficiency of the pleadings," In re Schering Plough Corp., 678 F.3d 235, 243 (3d Cir. 2012), "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites," CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted) (alterations in original).

"In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Aichele, 757 F.3d at 358.

By contrast, "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." Gould

Elecs., 220 F.3d at 176. A factual attack places the burden of proof on plaintiff to show "that jurisdiction does in fact exist." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

Defendants moved to dismiss under Rule 12(b)(1) on the grounds that the Secretary of Homeland Security's decision to revoke an approved visa petition is discretionary and thus not subject to judicial review. See Mot. Dismiss 2, 13. In response, Plaintiffs conceded that they "cannot dispute the technical legal descriptions of 'denial' decisions as non-discretionary, and 'revocations' as being at the discretion of the Defendant USCIS." Pls.' Opp. 5. Instead, Plaintiffs opposed Defendants' 12(b)(1) motion on the basis that "for all intents and purposes, equitable and otherwise, the instant 'revocation' of Danny's petition for his mother Gladys, issued nunc pro tunc, by the Defendants--after realizing their own error--is nothing more than a[n] ex post facto curative for its own mistaken [approval]." Id. Plaintiffs thus characterize Defendants' revocation of Danny's petitions as a "cloak" or "cover" for what is in reality a statutory denial. See Pls.' Opp. 5.

As an initial matter, Defendants' motion constitutes a factual attack under 12(b)(1) because it challenges whether this Court actually has jurisdiction to hear the case. The Court therefore analyzes this issue mindful that Plaintiff bears "the burden of proof that jurisdiction does in fact exist." Mortensen, 549 F.2d at 891.

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, allows an alien eligible for an indefinite stay in the United States to petition for an immigrant visa. Immigrant visas are governed by 8 U.S.C. § 1154 and 8 C.F.R. § 204, which restrict an alien's eligibility to enter the United States unless the alien fits into at least one of several carefully tailored categories. Every petition approved under 8 U.S.C. § 1154 is subject to 8 U.S.C. § 1155, which provides that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title. Such revocation shall be effective as of the date of approval of any such petition." 8 U.S.C. § 1155.

Generally, a court has jurisdiction under Section 704 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, to review "final agency action" that is non-discretionary and adversely affects the party seeking review. Pinho v. Gonzales, 432 F.3d 193, 200 (3d Cir. 2005). The Third Circuit has

emphasized the importance of "distinguish[ing] carefully" between "decisions committed to agency discretion, and decisions, whether ministerial or purely legal, governed directly by the applicable statute or regulation":

> This distinction is central to the question of subject-matter jurisdiction, and is easy to elide. . . . <u>Whatever the label, our caselaw distinguishes between actions which an agency official may freely decide to take or not to take, and those which he is obligated by law to take or not to take</u>. In the case of adjustment of status, an eligible immigrant may have his application denied within the discretion of the agency. But the immigrant's eligibility itself is determined by statute. To treat all denials of adjustment as discretionary, even when based on eligibility determinations that are plainly matters of law, is to fundamentally misunderstand the relationship between the executive and the judiciary.

Id. (emphasis added) (internal quotation marks and citations omitted).

Several months after deciding Pinho, the Third Circuit held unequivocally that a USCIS decision to revoke a visa pursuant to 8 U.S.C. § 1155 is an unreviewable discretionary determination. See Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 205 (3d Cir. 2006). Accordingly, federal courts lack jurisdiction to review § 1155 revocation decisions because of the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii). See id. This provision, as amended by the REAL ID Act of 2005, provides in relevant part as follows:

> Notwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B)(ii).[7] The court explained in Jilin that the language "may," "at any time," and "deems" in 8 U.S.C. § 1155 renders discretionary any decision made pursuant to that provision--and because those decisions are considered discretionary, they are also considered unreviewable under 8 U.S.C. § 1252(a)(2)(B)(ii). Jilin, 447 F.3d at 203–05.

Several judges within this District have recently ruled on cases similar to the present case, and in every instance, they have found jurisdiction lacking over § 1155 decisions due to § 1252(a)(2)(B)(ii). In Wang v. Johnson, No. 15-cv-358, 2015 WL 4932214 (E.D. Pa. Aug. 18, 2015), the petitioner was a Chinese immigrant who married a U.S. citizen five years after entering the United States as a B-1 visitor. Id. at *1. Shortly after the marriage, the petitioner's husband

---

[7] As Defendants note, "[a]lthough § 1252 is titled 'Judicial review of orders of removal,' the jurisdiction stripping provision has been amended to apply 'regardless of whether the judgment, decision, or action is made in removal proceedings.'" Mot. Dismiss at 14 n.5 (quoting REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., § 101(f)(2), 119 Stat. 231, 305 (2005) (codified as amended at 8 U.S.C. § 1252(a)(2)(B)).

14

filed an I-130 petition on her behalf, and the petition was thereafter approved. Id. After the petitioner applied for an adjustment of status to become a permanent resident, however, USCIS issued a NOIR stating that the petitioner had, at the time she applied for her B-1 visa, indicated she was married to someone else. Id. USCIS then determined that the petitioner had failed to prove either that she had terminated her previous marriage or that the marriage had never existed, and it therefore revoked the previously approved I-130 petition pursuant to 8 U.S.C. § 1155. Id.

Citing Pinho, the Wang petitioner argued that the court had jurisdiction over the decision regarding her adjustment of status because "the determination of eligibility for status adjustment is a reviewable legal question." Wang, 2015 WL 4932214, at *4. The district court, however, rejected this argument on the basis that "[w]hether or not the I-130 petition was or should have been revoked is not a legal question like the question in Pinho of what constituted a 'conviction' under the relevant statute." Id. The district court found instead that "[t]he decision in Jilin is controlling in this case and it established that decisions by the Secretary made pursuant to § 1155 are not subject to judicial review." Id. at *3.

Trans American Trucking Service, Inc. v. Holder, No. 09-6116, 2010 WL 1371663 (D.N.J. Apr. 5, 2010), yielded a similar result: the district court found that jurisdiction was lacking because "[t]he Third Circuit in Jilin made clear that revocation decisions under § 1155 are not subject to judicial review regardless of the basis for the decision." Id. at *2. In reaching this conclusion, the district court specifically rejected the plaintiffs' argument that "guidance or definitions provided in other statutes relied on in making a revocation decision make judicial review meaningful, altering the general position that revocation decisions under § 1155 are not reviewable." Id.

The Court is vaguely troubled by the implications of the Jilin rule. The parties do not dispute that had USCIS denied Sammy's Petition in the first instance, that denial would be reviewable by this Court. Further, the parties do not dispute that USCIS should have denied Sammy's Petition in the first instance, nor do they dispute that USCIS mistakenly approved the petition pursuant to 8 U.S.C. § 1154(b). Finally, the parties do not dispute that, in order to obtain judicial review in this case, Danny must once again (for a third time) file an I-130 Petition for Gladys, await Defendants' (presumable) denial of that petition under 8 U.S.C. § 1154(c), and then file a complaint based on the reviewable denial of the petition.

As Plaintiffs point out, Jilin's bar on judicial review of § 1155 revocation decisions theoretically could allow USCIS and the BIA to trap Plaintiffs in a perpetual cycle of unresolved petitions. If USCIS and the BIA continue to approve Danny's petitions for Gladys--thereby giving Danny and Gladys no grounds to complain to a court about a non-discretionary (and therefore reviewable) denial--but then revoke those approvals in discretionary (and therefore unreviewable) decisions pursuant to § 1155, then Plaintiffs will never obtain judicial review of a discretionary decision that is functionally equivalent to a mandatory denial. Pls.' Opp. 5-6 & n.2. The Jilin rule thus seems to provide a loophole--however small--through which agencies might dodge the important distinction "between actions which an agency official may freely decide to take or not to take, and those which he is obligated by law to take or not to take." Pinho, 432 F.3d at 200.

Nevertheless, the Jilin rule is just that: a rule.[8] The Jilin court acknowledged explicitly that its decision

---

[8] The Third Circuit is aligned with nearly all other circuits to have confronted this issue. See Mehanna v. U.S. Citizenship & Immigration Servs., 677 F.3d 312, 314-15 (6th Cir. 2012) (revoking a visa petition under § 1155 is discretionary); Green v. Napolitano, 627 F.3d 1341, 1344-46 (10th Cir. 2010) (same); Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir. 2009) (same); Sands v. U.S. Dep't of Homeland Sec., 308 Fed. App'x 418, 419-20 (11th Cir. 2009) (same); Ghanem v. Upchurch, 481 F.3d 222, 223-24 (5th Cir. 2007)(same); El-Khader v. Monica, 366 F.3d 562, 566 (7th Cir. 2004) (same). Only the Ninth Circuit has

"allow[s] the Secretary to approve a petition it did not like on Monday, then revoke it on Tuesday and be fully insulated from judicial review, whereas, had [he] denied it on Monday, that denial would have been reviewable." Jilin, 447 F.3d at 205 n.11. This "inequitable result" notwithstanding, the Jilin court nevertheless ruled as it did, noting that its "hands are tied to correct a curious result of Congress' statutory scheme." Id. Our sister courts within this District have followed the Jilin rule in similar cases, and we are presently constrained to do the same.

### IV.   CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss only on the basis that the Court lacks jurisdiction to review the Secretary of Homeland Security's decision to revoke an approved visa petition. The Court declines

---

reached the opposite conclusion and held, in a split decision, that courts do have jurisdiction under § 1252(a)(2)(B)(ii) to review § 1155 revocations. See ANA Int'l, Inc. v. Way, 393 F.3d 886, 895 (9th Cir. 2004) (explaining that "[w]hen the Attorney General relies upon discrete legal classifications of an individual or an act to reach a decision, even where that decision involves a certain measure of discretion, the meaning of that particular legal classification nevertheless remains a reviewable point of law."). The Third Circuit in Jilin explicitly rejected the Ninth Circuit's holding and rationale. See Jilin, 447 F.3d at 202-04 (rejecting the appellants' argument "[t]racking the Ninth Circuit's logic in ANA International").

to reach the question of whether Plaintiffs have failed to state a claim under Rule 12(b)(6).

     An appropriate order follows.